UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE JUNG, LLC et al. | CIVIL ACTION NO. 23-692 |
| v. | SECTION "G"(5) |
| SONDER USA, INC. | JUDGE NANETTE JOLIVETTE BROWN |
| | MAGISTRATE MICHAEL NORTH |

## SONDER'S MEMORANDUM IN SUPPORT OF
## ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs allege that in August 2018, Plaintiff The Jung Master Tenant, LLC ("Master Tenant") and Defendant Sonder USA Inc. ("Sonder") entered into a Sublease pursuant to which Sonder subleased certain units located in The Jung Hotel.[1]  Plaintiffs then plead a convoluted set of facts that can be distilled into two groups: (a) allegations of undated, unsourced, and unfavorable "reviews" and/or "comments" made by guests of The Jung Hotel complaining about various aspects of their stays,[2] and (b) allegations concerning two "shootings" inside and outside The Jung Hotel that allegedly occurred on December 28, 2020 and August 19, 2022.[3]  Plaintiffs then attempt (but fail) to connect those factual allegations to Sonder's obligations under the Sublease, alleging that the existence of the undated reviews/comments and the "shootings" establish that Sonder has breached its obligations under the Sublease because they "jeopardize" Master Tenant's hotel license and/or constitute non-compliance with allegedly-applicable "AAA Four Diamond standards."[4]

---

[1] Rec. Doc. 1-1, Complaint, at ¶ 7; Exhibit A to Plaintiffs' Complaint, Rec. Doc. 1-1 at 28–43, the Sublease.
[2] Rec. Doc. 1-1, Complaint, at ¶¶ 14–15, 49–54, 60, 62–66.
[3] Rec. Doc. 1-1, Complaint, at ¶¶ 23, 24–26.
[4] Rec. Doc.1-1, Complaint.

Fundamental defects in the Complaint mandate its dismissal *regardless of whether it properly pleads claims against Sonder* (which it does not).  First, the Sublease establishes a mandatory process that must be followed for alleged defaults of the Sublease,[5] among which is the requirement of "written notice" to Sonder in a specific form and a necessary cure period.[6] Plaintiffs do not – because they cannot – allege that they complied with that condition precedent to filing a lawsuit.

Second, Plaintiffs seek to recover damages from Sonder for the alleged defaults and seek a judgment "requiring Sonder to maintain the hotel industry AAA Four Diamond Standard at the Premises."[7]  However, the Sublease provides that Master Tenant's "sole and exclusive" remedy for any alleged default by Sonder is to "cancel and terminate" the Sublease and to "proceed for all past due Rent owed by [Sonder] as of the date of such termination."[8]  Here, the Complaint does not include a claim for termination or for payment of past due rent, which would be the only remedies available even if Sonder had been properly placed in default and failed to cure.

Third, Plaintiffs fail to cite any provisions of the Sublease that have even plausibly been breached by Sonder.  In fact, the Sublease shows that Master Tenant maintains control over The Jung Hotel, and to the extent the facts as alleged in the Complaint were true, they would potentially constitute a breach of *Master Tenant's* obligations—not Sonder's obligations.  Therefore, taking Plaintiffs' allegations at face value, their Complaint is legally deficient and fails to state a claim.

Accordingly, for these reasons as well as others set forth below, Plaintiff's Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6), and Sonder should be awarded its reasonable attorneys' fees.

---

[5] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 28.
[6] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 25.
[7] Rec. Doc.1-1, Complaint, at ¶¶ 78–81.
[8] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 28.

# SECTION 1
# THE HOTEL PROPERTY AND THE PARTIES

The Jung Hotel is a building located at 1500 Canal Street.[9]  It is owned by The Jung, LLC ("Owner").[10]  According to the Complaint, Owner purchased the property in 2007 and then spent $155,000,000 to renovate the property and "restore it to its former splendor."[11]  In February 2015, Owner allegedly leased the *entire* property to The Jung Master Tenant, LLC ("Master Tenant").[12]  In 2018, the property allegedly "reopened as The Jung Hotel and Residences."[13]  In August 2018, Master Tenant executed a Sublease Agreement with Sonder for a *portion* of the units within The Jung Hotel.[14]

Importantly, Sonder did *not* sublease the entirety of The Jung Hotel.  All units located on floors one through seven were not included; thus, the Complaint calls Sonder's units a "hotel within a hotel."[15]  Equally important, Sonder did *not* sublease the common areas of The Jung Hotel, *e.g.*, its entrance, hallways, elevators, etc., even on the floors where it did sublease units.[16]  Although the Sublease granted Sonder the *non-exclusive* use of those areas,[17] as between Sonder and Master Tenant, those areas remained under Master Tenant's operation and control.[18]

---

[9] Rec. Doc. 1-1, Complaint, at ¶ 3.

[10] Rec. Doc. 1-1, Complaint, at ¶ 3.

[11] Rec. Doc. 1-1, Complaint, at ¶ 4.

[12] Rec. Doc. 1-1, Complaint, at ¶ 5.

[13] Rec. Doc. 1-1, Complaint, at ¶ 6.

[14] Rec. Doc. 1-1, Complaint, at ¶ 7; Exhibit A to Plaintiffs' Complaint, Rec. Doc. 1-1 at 28–43, the Sublease

[15] Rec. Doc. 1-1, Complaint, at ¶ 8 ("Generally, the Premises is comprised of the eighth through seventeenth floors of the Hotel, essentially a hotel within a hotel."); Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at its Exhibit A Monthly Rent Schedule.

[16] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, ¶ 1 (defining the premises leased by Sonder as "(111) residential apartment unit(s) . . . comprising twenty-five (25) two-bedroom and eighty-six (86) one-bedroom residential apartments being the Unit numbers set forth on EXHIBIT 'A' (collectively, the 'Premises')").

[17] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, ¶ 1 (stating that "[i]n addition to the use of the Premises, [Sonder] and its . . . guests, sublessees, and customers . . . shall be entitled to the non-exclusive use of the common areas of the Property, including, but not limited to all sidewalks, access roads, driveways . . . courts, stairs, ramps, elevators, escalators . . . community halls").

[18] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 2 ("It is understood and agreed that this Lease is a 'gross lease' and, except as specifically provided herein to the contrary with respect to Utility Costs . . . in no event shall [Sonder] have any responsibility for the operating expenses, Common Area charges, condominium assessments, taxes, or other similar charges for the Premises or the Property."); ¶ 18 ("[Master Tenant] shall pay all

## SECTION 2
## THE RELEVANT PROVISIONS OF THE SUBLEASE

The Sublease Agreement attached to Plaintiffs' Complaint outlines and controls the respective rights and obligations of Master Tenant and Sonder regarding the portion of The Jung Hotel's units that were subleased to Sonder. Several of its provisions are relevant to the disposition of this Motion:

- Premises. Master Tenant granted Sonder permitted use of 111 residential apartment units within The Jung Hotel. As used in the Sublease, "The Property" refers to The Jung Hotel, as a whole.[19] "The Premises" refers to the 111 residential units subleased to Sonder.[20] Sonder's subleased units were located on the Property's eighth through seventeenth floors.[21] Although the Sublease grants Sonder the *non-exclusive* use of the common areas such as the entrance, hallways, and elevators,[22] as between Sonder and Master Tenant, the common areas remain under Master Tenant's operation and control.[23]

- Rent. In exchange for the above, Master Tenant is entitled to receive fixed monthly rent, with annual fixed increases.[24] Importantly, this was a "gross lease" that provided that with limited exceptions, Sonder has no responsibility for "operating expenses, Common Area charges, condominium assessments, taxes, or other similar charges for the Premises or the Property."[25]

---

expenses, costs, and amounts of every kind or nature that [Master Tenant] incurs because of or in connection with the ownership, operation, management, maintenance, or repair of the Property, including the Premises, and shall perform repairs necessary to maintain and keep the Property, including the Premises and the Common Areas . . . in good working order, suitable for residential use.").

[19] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at unnumbered second paragraph (referencing The Jung Hotel & Residences as "the Property").

[20] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 1 1 (defining the premises leased by Sonder as "(111) residential apartment unit(s) . . . comprising twenty-five (25) two-bedroom and eighty-six (86) one-bedroom residential apartments being the Unit numbers set forth on EXHIBIT 'A' (collectively, the 'Premises')").

[21] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at its Exhibit A Monthly Rent Schedule.

[22] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, ¶ 1 (stating that "[i]n addition to the use of the Premises, [Sonder] and its . . . guests, sublessees, and customers . . . shall be entitled to the non-exclusive use of the common areas of the Property, including, but not limited to all sidewalks, access roads, driveways . . . courts, stairs, ramps, elevators, escalators . . . community halls").

[23] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 2 ("It is understood and agreed that this Lease is a 'gross lease' and, except as specifically provided herein to the contrary with respect to Utility Costs . . . in no event shall [Sonder] have any responsibility for the operating expenses, Common Area charges, condominium assessments, taxes, or other similar charges for the Premises or the Property."); ¶ 18 ("[Master Tenant] shall pay all expenses, costs, and amounts of every kind or nature that [Master Tenant] incurs because of or in connection with the ownership, operation, management, maintenance, or repair of the Property, including the Premises, and shall perform repairs necessary to maintain and keep the Property, including the Premises and the Common Areas . . . in good working order, suitable for residential use.").

[24] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 2.

[25] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 2.

- <u>Hotel License</u>.  Master Tenant, not Sonder, was required to obtain a hotel license.  Sonder agreed that it would not commit any act that would jeopardize or result in the suspension or termination of Master Tenant's hotel license.[26]

- <u>Assignment/Subletting</u>.  Master Tenant acknowledged that Sonder's business entailed "renting and then subletting" the units at issue and agreed that Sonder could do so without interference from Master Tenant.[27]  Not surprisingly, the Sublease does not preclude Sonder from renting rooms to any particular class of individuals, such as residents of New Orleans and the surrounding areas.  Lastly, the Sublease does not restrict or dictate the rates that Sonder can accept for the units.[28]

- <u>Utilities</u>.  Master Tenant, not Sonder, is obligated to furnish all utilities to the subleased units.[29]  These include "utilities common for residential apartments," including water, electricity, television cable, trash pickup, and internet services.[30]  Although Master Tenant furnishes the utilities, Sonder is required to pay, directly to the appropriate provider, the cost of "all television cable, electricity, internet services, water, and trash pickup" for the subleased units.

- <u>Repair and Maintenance</u>.  Master Tenant, not Sonder, "shall pay all expenses, costs, and amounts of every kind or nature that [Master Tenant] incurs because of or in connection with the ownership, operation, management, or repair of the Property, *including the Premises and Common Areas*, and all components of it in good working order, suitable for residential use."[31]  Sonder's repair and maintenance obligations are limited *to the subleased units*, and are further limited to "the nonstructural interior cosmetic components, appliances, and consumables" of them.[32]  After delineating the duties of Master Tenant and Sonder, but without revising them, the provision states that "*in all respects regarding repairs and maintenance* of the Property and Premises, the parties mutually commit themselves to maintain the hotel industry AAA Four-Diamond Standard."[33]

- <u>Security</u>.  There are no provisions in the Sublease obligating Sonder to provide "security" for The Jung Hotel.[34]  In fact, the word "security" is not contained in the Sublease.[35]  This makes sense in the context of the "hotel within a hotel" concept, *as Sonder was not granted the authority to control any aspect of the common areas of the Property* (hallways, elevators, etc.) or ingress/egress to The Jung Hotel as a whole; instead, as shown above, the Sublease Agreement only granted Sonder non-exclusive

---

[26] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 13.
[27] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 14.
[28] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 14.
[29] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 17.
[30] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 17.
[31] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 18.
[32] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 18.
[33] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 18 (emphasis added).
[34] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease.
[35] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease.

use of such areas,[36] which, as between Sonder and Master Tenant, remained under the control of Master Tenant.[37]

- <u>Notice</u>.  The Sublease provides that any "notice required or permitted under this Lease" "shall" be deemed sufficient if sent to Sonder by certified mail at its headquarters in San Francisco, with a copy sent to Sonder's office in Elmwood.[38]

- <u>Default by Sonder</u>.  The Sublease addresses what events would constitute a default by Sonder, which included "(b) [Sonder] fails to comply with any other provisions of this Lease, and that failure continues for more than thirty (30) calendar days after [Sonder] receives written notice from [Master Tenant] such failure."[39]  The Sublease also provides for Master Tenant's remedy in the event of Sonder's default: "If [Sonder] is in default under this Section 29, [Master Tenant] may, *as its sole and exclusive remedy*, cancel and terminate this Lease upon written notice to [Sonder] and proceed for all past due Rent owed by [Sonder] as of the date of such termination."[40]

- <u>Attorneys' Fees</u>.  The Sublease provides that if either party files suit against the other for violation of the Sublease, the prevailing party is entitled to reasonable attorneys' fees.[41]

- <u>No Third-Party Beneficiaries</u>.  Paragraph 36 of the Sublease is entitled "NO THIRD-PARTY BENEFICIARIES."  It provides that the lease is binding on the parties and that "[n]o other person or entity shall be a third-party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Lease."[42]

- <u>Governing Law</u>.  The lease states that "the parties to this Lease understand and agree *that the provisions of this Lease, between them, has the effect of law*, but in reference to matters for which this Lease does not provide, this Lease shall be governed by and construed in accordance with the Ordinances of the City of New Orleans, the Laws of the State of Louisiana and the federal laws of the United States."[43]

---

[36] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, ¶ 1 (stating that "[i]n addition to the use of the Premises, [Sonder] and its . . . guests, sublessees, and customers . . . shall be entitled to the non-exclusive use of the common areas of the Property, including, but not limited to all sidewalks, access roads, driveways . . . courts, stairs, ramps, elevators, escalators . . . community halls").

[37] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 2 ("It is understood and agreed that this Lease is a 'gross lease' and, except as specifically provided herein to the contrary with respect to Utility Costs . . . in no event shall [Sonder] have any responsibility for the operating expenses, Common Area charges, condominium assessments, taxes, or other similar charges for the Premises or the Property."); ¶ 18 ("[Master Tenant] shall pay all expenses, costs, and amounts of every kind or nature that [Master Tenant] incurs because of or in connection with the ownership, operation, management, maintenance, or repair of the Property, including the Premises, and shall perform repairs necessary to maintain and keep the Property, including the Premises and the Common Areas . . . in good working order, suitable for residential use.").

[38] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 25.

[39] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 29.

[40] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 29 (emphasis added).

[41] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 34.

[42] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 36.

[43] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 27 (emphasis added).

## SECTION 3
## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for failure to state a claim upon which relief can be granted.[44]  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[45] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[46]  It is well-established that in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court "must limit their inquiry to the facts stated in the complaint and the documents attached to or incorporated in the complaint."[47]  Here, Plaintiffs attached the Sublease to their Complaint, so it can be considered when analyzing this Motion to Dismiss.[48]  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of Plaintiffs.[49] However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court is not bound to accept as true legal conclusions couched as factual allegations.[50]

## SECTION 4
## THE ENTIRE COMPLAINT SHOULD BE DISMISSED

There are several deficiencies in the Complaint that warrant its dismissal.  Some of the defects apply equally to the claims of Owner and Master Tenant, while others only affect Owner's

---

[44] FED. R. CIV. P. 12(b)(6).
[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[46] *Iqbal*, 556 U.S. at 663.
[47] *Robinette v. U.S. Postal Serv.*, No. CIV. A. 02-1094, 2002 WL 1728582, at *2 (E.D. La. July 24, 2002) (citing *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996)).
[48] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease.
[49] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[50] *Iqbal*, 556 U.S. at 678.

claims.  While Sonder addresses all of the defects here, this Court does not need to reach all of them to dismiss the Complaint; the grounds warranting dismissal are independent and alternative.

## I.    All Claims in the Complaint Are Barred by the Sublease Notice and Cure Provision.

For contracts governed by Louisiana law, like the Sublease, "a plaintiff cannot state a breach of contract claim if it fails to comply with any notice provision or other conditions precedent set forth in the contract or applicable law."[51]  Paragraph 29 of the Sublease governs actions that Master Tenant was required to take if it contends that Sonder has breached the Sublease, *i.e.*, is in default.  Under the Sublease, a default includes a situation where "Sublessee fails to comply with any of the other provisions of this Lease, and that failure continues for more than thirty (30) calendar days after Sublessee receives written notice from Sublessor of such failure."[52]  In other words, the Sublease requires that Master Tenant (1) give Sonder notice (in the manner required by Paragraph 25 of the Sublease, *i.e.*, certified mail to Sonder's headquarters in San Francisco)[53] of any alleged failure to comply with the terms of the Sublease and (2) provide Sonder with 30 days to cure.  Only if the breach continues for a period of 30 days after notice has been provided is Sonder deemed to be in default of the Sublease.

Here, Master Tenant has not alleged (a) that it provided Sonder with formal notice of the alleged breaches of the Sublease and (b) that the conditions that are the basis for the purported

---

[51] *Multinational Assoc. of Supportive Care In v. MCI Grp. Canada Inc.*, NO. 20-01456, 2021 WL 1909698 (W.D. La. May 11, 2021).  A suspensive condition is the civil law analog of a condition precedent.  La. Civ. Code art. 1767.  "A conditional obligation is one dependent upon an uncertain event.  If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."  Conditions precedent in a contract, more properly called "suspensive conditions" under the Louisiana Civil Code, are terms that suspend a party's obligation until the occurrence of a condition.  *Acadian Diagnostic Labs., L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 411 (5th Cir. 2020); *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 621 (5th Cir. 2005) (citing *S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So. 2d 198, 204 n.15 (La. 1987)).  When suspensive conditions are in a contract, a party has no duty to perform its own obligations until those conditions are met.

[52] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 29.

[53] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 25.

breaches have continued for a period of 30 days after such notice was provided. The Complaint

only alleges the following with regards to contact between Master Tenant and Sonder:

- <u>Paragraph 29</u>. Email dated May 22, 2020. References an incident at The Jung, expresses concern over "the extremely low rates Sonder is selling rooms for," and requests a meeting "to come up with a solution that works for all."

- <u>Paragraph 30</u>. Alleges that Sonder was sent a recap "at the end of the second quarter of 2020" of issues "at Sonder's premises."

- <u>Paragraph 32</u>. Email dated September 24, 2020. Master Tenant says "we need to discuss . . . . Bad press does not do any of us any good as it relates to the image of the Jung."

- <u>Paragraph 34</u>. Email dated December 28, 2020. References the "shooting," complains about the rates that Sonder is charging for its units, says that it will "cost me as it relates to the image of the hotel," and that "it's more than just selling rooms to have a successful operation and I am not sure Sonder understands that."

- <u>Paragraph 36</u>. Alleges that on April 6, 2021, Ms. Dejan [of Sonder] was "advised that Sonder's lack of control or oversight over its Premises" caused Plaintiffs to "lose out on a lucrative business opportunity, specifically associating ('flagging') the Jung Hotel with a major national brand…"

Nothing in the above emails alleged that Sonder was in default of any of its obligations

under the Sublease; nor do the emails comport with the form of notice mandated by the Sublease.[54]

Instead, they were general complaints about the *rates* that Sonder was charging, the "bad press"

generated by the alleged incidents, and the supposed loss of a business opportunity. The Complaint

contains no other allegation of communications between Master Tenant and Sonder regarding The

Jung Hotel, and specifically, no allegation whatsoever that Master Tenant provided proper notice

of default to Sonder pursuant to the Sublease. Nor is there any mention in the Complaint of any

emails or communications whatsoever from Master Tenant to Sonder regarding the other defaults

Plaintiffs allege, *i.e.*, "jeopardizing of the hotel license," the existence of "dirty units" with

---

[54] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 25 ( "[N]otice required or permitted under this Lease" must be sent by certified mail to Sonder at its headquarters in San Francisco, with a copy to Sonder's office in Elmwood.).

"toenails in the sheets," failure to maintain the "AAA Four Diamond Standard," or failure to promptly repair damage to units.[55]  The Complaint fails to allege compliance with the notice and cure provisions of the Sublease.  Therefore, the Complaint should be dismissed.[56]

## II.    All Claims in the Complaint Are Barred by the Sublease's Limitation of Remedies.

Under Louisiana law, it is well-settled that a contract is the law between the parties.[57] Louisiana state and federal courts have recognized that pursuant to these freedom of contract principles, parties can specify limited or exclusive remedies in the event that an obligation is breached.[58]  As explained *infra*, Plaintiffs have failed to plead a valid breach of contract claim against Sonder because the obligations allegedly breached are not contained in the Sublease.  But even if Plaintiffs could plausibly plead that Sonder breached any obligations it owed, the *relief* that Plaintiffs request in the Complaint – damages and specific performance[59] – is barred by the plain language of the Sublease, which states as follows:

> 29.  **DEFAULT BY LESEE**.  [Sonder] will be in default under this Lease if any one or more of the following events occurs:    (b) [Sonder] fails to comply with any other provisions of this Lease…..[for more than 30 days after notice]….If [Sonder] is in default under this Section 29, *[Master Tenant] may, as its **sole and exclusive remedy**, cancel and terminate this Lease upon written notice to [Sonder] and proceed for all past due Rent owed by [Sonder] as of the date of such termination*.[60]

---

[55] Rec. Doc. 1-1, Complaint.

[56] *Multinational Assoc. of Supportive Care In*, 2021 WL 1909698, at *4–5 (enforcing the contract's notice provision and mandating the amendment of the complaint).

[57] *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96); 702 So. 2d 648, 666 (stating that the "[l]ease contract itself is the law between the parties;  it defines their respective rights and obligations so long as it does not affect rights of others and is not contrary to public good").

[58] *See generally Houston Expl. Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) (stating that contracts limiting liability are generally valid and enforceable under Louisiana law); *Rhodes v. Congregation of St. Francis De Sales Roman Cath. Church*, 476 So. 2d 461, 463 (La. App. 1 Cir. 1985) (stating that parties may legally contract for a limitation on recoverable damages); *Quality Flooring v. B.F. Constr. Co., Inc*., 2009-1471 (La. App. 4 Cir. 1/5/11); 56 So. 3d 395, 401 (affirming the trial court judgment awarding payment of contractor for completed work but denying award of other claimed damages based on contract provision stipulating that the contractor's "sole and exclusive remedy" was payment of the amount due under the contract).

[59] Rec. Doc. 1-1, Complaint, at ¶¶ 78–82.

[60] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 29 (emphasis added).

By the plain terms of the Sublease, then, Master Tenant's "sole and exclusive" remedy in the event that Sonder defaults on its Sublease obligations is to seek termination of the lease and recovery of any past due rent. Thus, the remedies requested in Plaintiff's Complaint are barred by the Sublease, which therefore requires the dismissal of those claims.

Indeed, limitation of damages clauses are permitted by Louisiana law and are routinely enforced. For example, in *1100 South Jefferson Davis Parkway, LLC v. Williams*, 165 So. 3d 1211 (La. App. 4 Cir. 2015), the plaintiff entered into a contract whereby it agreed to sell immovable property to the defendant for $875,000. The contract gave the defendant an inspection period of 30 days; after same expired, the defendant terminated the contract due to issues with the property's flood elevation. Over a year later, the plaintiff sold the property to a third party for $616,000 and filed suit against the defendant for the delta of $259,000, alleging breach of contract.[61] Although the court ruled for the plaintiff on breach of contract, it found that plaintiff's recovery was limited to $10,000 because of the contract's terms, stating that "under the stipulated damages clause, '[the plaintiff] had the option of seeking specific performance or re-offering the property for sale and retaining the deposit.'"[62] And because the plaintiff had already sold the property by the time it filed its petition, its "only recourse was that it was entitled to [the defendant's] forfeited deposit."[63]

Similarly, in *Rhodes v. Congregation of St. Francis De Sales Roman Catholic Church*, 476 So. 2d 461 (La. App. 1 Cir. 1985), the church sold the plaintiff title to servitudes/easements for burial in vertically-adjacent crypts. When the plaintiff's husband died, the plaintiff discovered that the church had buried someone else by mistake in the crypt she contracted for. The church offered the plaintiff an alternative crypt of greater value to bury her husband within, which she

---

[61] 165 So. 3d at 1215.
[62] *Id*. at 1219–20.
[63] *Id*. at 1220.

accepted. However, the plaintiff filed suit against the church seeking damages for breach of contract.[64] Although the Court found that the contract was breached, it dismissed the plaintiff's claims due to the limitation of remedies provision contained in the contract. That provision stated that the church had "the right to correct any errors that may be made by it in making . . . transfer or conveyance of any interment rights or plot, by either cancelling such conveyance and substituting and conveying in lieu thereof other [plots of equal value]."[65] The appellate court affirmed the district court's finding that "the language of this provision clearly indicates an intent that this alternative constitutes plaintiffs' sole remedy."[66]

The same result is appropriate here. To the extent that Plaintiffs could plausibly plead that Sonder breached any obligation under the Sublease (which they cannot), the remedies requested by Plaintiffs in the Complaint are barred by the exclusive remedy provision of the Sublease. As such, the Complaint should be dismissed.

## III.    The Complaint Fails to Plead a Plausible Claim for Breach of the Sublease.

When a complaint containing a breach-of-contract claim is challenged by a motion to dismiss, to avoid dismissal the plaintiff must "plausibly plead" that the defendant: (1) undertook an obligation to perform; (2) failed to perform the obligation; and (3) the failure to perform resulted in damages to the plaintiff.[67] A plaintiff cannot vaguely cite a contract and allege it was breached; rather, "a plaintiff must point towards a specific contractual provision that was breached in order to state a valid claim."[68] Moreover, if a plain review of the contract repudiates the plaintiff's legal

---

[64] 476 So. 2d at 462.
[65] *Id*. at 463.
[66] *Id*.
[67] *U.S. All. Grp, Inc. v. Cardtronics USA, Inc.*, NO. 21-1074, 2022 WL 266995, at *3 (E.D. La. Jan. 28, 2022); *GeoVera Specialty Ins. Co. v. Joachin*, NO. 18-7577, 2019 WL 3238557, at *7 (E.D. La. July 19, 2019).
[68] *All Green Corp. v. Wesley*, NO. 20-0121, 2021 WL 314290, at *8 (W.D. La. Jan. 29, 2021) (citing *Whitney Bank v. SMI Co.s Global, Inc.*, 949 F.3d 196 (5th Cir. 2020)).

conclusion of breach, then the plaintiff cannot avoid dismissal.[69]   Indeed, when interpreting

contracts at the motion to dismiss stage, the court is "entitled to 'draw on its judicial experience

and common sense,'"[70] and a plaintiff cannot avoid dismissal by construing a contract in a non-

sensical manner.  Indeed, "interpreting a contract is a matter of law for the court."[71]  Plaintiffs'

Complaint does not satisfy this standard.

### A.    The Complaint Does Not Plausibly Plead That Sonder Undertook Any Obligation That Was Breached Regarding Hotel Licensure.

The Complaint's section on breach begins with Paragraph 20, which quotes the provision

of the Sublease discussing the hotel license that Master Tenant was required to obtain, and notes

that Sonder agreed not to commit any act or omission that would jeopardize or result in the

suspension, expiration, or termination of that license.  But the Complaint *does not allege* that

Master Tenant has been given any reason to believe its hotel license is in jeopardy, or that any

action whatsoever has been taken against Master Tenant's hotel license for any reason, much less

because of any acts or omissions of Sonder.  To the extent Plaintiffs are attempting to make a claim

for something that *could* or *may* occur to Master Tenant's hotel license in the future, but has not

happened yet, this does not establish a concrete injury that is redressable at this juncture, which

means Plaintiffs' Complaint would fail from an Article III standpoint.[72]

Further, these threadbare allegations regarding "jeopardizing the hotel license" have no

legal merit.  In the City of New Orleans, the licensure of any business, including hotels, is governed

by Chapter 150, Article VII. of the Code or Ordinances for the City of New Orleans (Occupational

---

[69] *Cougle v. Berkshire Ins. Co. of Am.*, 429 F.Supp. 3d 208, 220–21 (E.D. La. Dec. 13, 2019) (dismissing the plaintiff's claim for breach of contract because the language of the contract prevented the plaintiff from "plausibly pleading" the elements of breach of contract).

[70] *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 348 (5th Cir. 2020).

[71] *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016).

[72] *See generally Denning v. Bond Pharmacy, Inc.*, NO: 21-774, 2021 WL 9629068, at *3 (E.D. La. Oct. 13, 2021) (discussing standing in the context of a breach of contract claim).

License Tax),[73] and the Sublease specifically refers to it.[74]  The Code of Ordinances also contains specific provisions regarding the revocation of a business's occupational license that list the sole and exclusive grounds for revocation.  This ordinance further provides that an occupational license can only be revoked by the City after first providing notice to the occupational license holder, an opportunity for hearing, and proof of continued non-compliance with certain specified codes:

> ### Sec. 150-973. - Revocation.
> Any license granted or issued by the city shall be subject to revocation after due notice to the holder of such license and hearing thereon, upon proof of failure of continued compliance with the comprehensive zoning ordinance, the minimum property maintenance code, the building code, the mechanical code, and the electrical code, as the case may be.[75]

The Plaintiffs have failed to allege that any of the grievances against Sonder cited in the Complaint (*i.e*., the alleged shooting incidents, anonymous guest complaints regarding room conditions, or failure to comply with the allegedly-applicable AAA Four Diamond service standards) would constitute a violation of the City's zoning ordinance, property maintenance code, building code, mechanical code or the electrical code, which are found in other sections of the Code of Ordinances.[76]  Nor have Plaintiffs alleged that the City of New Orleans has issued any notice of revocation of the Hotel's licensure, as explicitly required under the above-quoted provisions of the Municipal Code.[77]  Moreover, and because hotel licenses are issued on an annual

---

[73] The New Orleans Code of Ordinances is available at this link: https://nola.gov/code-of-ordinances/.  The Code of Ordinances provides, "No person shall commence any business within the city without first paying a tentative license tax and after obtaining the approval of the department and safety and permits.  Ch. 150, Art. VII, § 150-953 (New business; license due upon commencement).  "Any person doing business within the city shall pay an initial occupational license tax on or before the day business begins," and further requires that the occupational license tax must thereafter be paid on January 1 of each calendar year.  Ch. 150, Art. VII, § 150-952.

[74] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 27.

[75] New Orleans Code of Ordinances, Ch. 150, Art. VII, § 150-973, *available at* https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH150TA_ARTVIIOCLI TA_S150-973RE (last visited Mar. 29, 2023).

[76] Rec. Doc. 1-1, Complaint.

[77] Rec. Doc. 1-1, Complaint.

basis,[78] The Jung Hotel's license would have been renewed January 1, 2023. Yet Plaintiffs' Complaint fails to plead any facts regarding that *not* occurring.[79] It is clear that Plaintiffs have failed to adequately plead facts, which if credited as true, would support a claim under the *Twombly* pleading standard on the basis that their licensure has been "jeopardized" by Sonder's alleged actions or inactions. These are nothing more than conclusory, threadbare claims that have no legal basis whatsoever, and clearly fail to state a claim for which relief can be granted.

### B.    The Complaint Does Not Plausibly Plead That Sonder Undertook Any Obligation That Was Breached Regarding Security.

To the extent that Plaintiffs want to use the Sublease's provision about "not jeopardizing the hotel license" as a basis for imposing broad and encompassing affirmative obligations on Sonder, the Complaint does not plausibly plead those obligations under Fifth Circuit precedent. Paragraph 22 of the Complaint contains a list of items that Plaintiffs allege Sonder should do but that Sonder is allegedly *not* doing. Importantly, Plaintiffs fail to cite any specific provision in the Sublease establishing that Sonder was obligated to do any of those things.[80] And in some instances, the Sublease Agreement makes clear that Sonder was *not* obligated to do them. For example, Subsections (a), (b), (c), and (d) of Paragraph 22 of the Complaint all relate to security and access to the Sonder units within The Jung Hotel. But the Sublease grants Sonder no control over the common areas and ingress/egress of The Jung Hotel and its hallways or elevators; Sonder only has

---

[78] "Any person doing business within the city shall pay an initial occupational license tax on or before the day business begins," and further requires that the occupational license tax must thereafter be paid on January 1 of each calendar year. New Orleans Code of Ordinances, Ch. 150, Art. VII, § 150-952, *available at* *https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH150TA_ARTVIIOCLITA_S150-952PATA* (last visited Mar. 29, 2023).

[79] Rec. Doc. 1-1, Complaint.

[80] *All Green Corp. v. Wesley*, NO. 20-0121, 2021 WL 314290, at *8 (W.D. La. Jan. 29, 2021) ("[A] plaintiff must point towards a specific contractual provision that was breached in order to state a valid claim.") (citing *Whitney Bank v. SMI Co.s Global, Inc.*, 949 F.3d 196 (5th Cir. 2020).

the *non-exclusive use* of them.[81]    Indeed, the operation of the common areas is solely the responsibility of Master Tenant under the plain terms of the Sublease.[82]    And nothing in the Sublease imposes any obligations upon Sonder as it relates to security; indeed, the word "security" is not even present.[83]

Likewise, Paragraph 22(e) alleges that "digital, credit-card-like key cards" are not used, but Plaintiffs cite nothing in the Sublease requiring them.  And in fact, the Sublease makes clear that "keyless keypads," a term that plainly does not require key cards, were optional.[84]  Paragraph 22(f) alleges that the rooms are "not equipped with a means for guests to contact emergency services directly, without the use of cell phones."  But the Sublease does not require Sonder to so equip its rooms, and in fact, provides that it is Master Tenant's obligation, not Sonder's obligation, to provide for the unit utilities, including phones.[85]  Paragraph 22(g) alleges that Sonder does not "check rooms" to ensure that occupancy limits are not exceeded, that guests "have not damaged the room mid-stay," and "have not engaged in conduct that would endanger others."  Yet Plaintiffs cite nothing in the Sublease imposing such an onerous obligation on Sonder.

Paragraph 22(h) exemplifies that Plaintiffs' Complaint is not "plausibly plead" as required by Fifth Circuit precedent, in that it alleges that Sonder acts contrary to "lodging industry best practices" because Sonder "rents rooms to New Orleans locals[.]"  However, nothing in the

---

[81] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 1 (only granting Sonder the "non-exclusive use" of the common areas).

[82] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 18 (providing that Master Tenant "shall pay all expenses, costs, and amounts of every kind or nature . . . because of or in connection with the ownership, operation, management . . . of the Property, including the Premise, and shall perform repairs necessary to maintain and keep the Property, including the Premises and the Common Areas . . . in good working order suitable for residential use.").

[83] Rec. Doc. 1-1 at 28-43, Exhibit A to Plaintiffs' Complaint, Sublease.

[84] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 6 (noting that Master Tenant was required to perform a list of work outlined in Exhibit "B" to the Sublease, which stated that Master Tenant was required to "install keyless keypad[s] for each Unit, *if furnished by [Sonder]*") (emphasis added).

[85] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 17 ("Sublessor shall furnish . . . utilities common for residential apartments . . . to each Unit.").

Sublease prevents Sonder from renting rooms to "New Orleans locals."[86]  Indeed, the Sublease explicitly allows Sonder to rent rooms to whomever it chooses and on whatever terms it chooses.[87]

Paragraphs 23 through 44 of the Complaint reference two shootings.  The first occurred in December of 2020, and allegedly involved "six unknown male suspects [forcing] their way into a unit inside the Jung Hotel."[88]  The second occurred in August of 2022, and allegedly involved "forty-three shots [being fired] outside of the Hotel."[89]  The theme of the Complaint's allegations in this section is that "there [is] no security outside of the building and no access code needed to enter the Jung."[90]  However, and as noted above, Sonder does not control ingress/egress to The Jung Hotel or its hallways/elevators; indeed, under the Sublease, that is controlled and operated by Master Tenant.[91]  And no provision in the Sublease obligated Sonder to provide security for the The Jung Hotel as a whole, or for its common areas.[92]  Thus, the Complaint has failed to plead a viable claim against Sonder under the Sublease with respect to any of these security issues, and the claims should be dismissed for that reason.

### C.    The Complaint Does Not Plausibly Plead That Sonder Undertook Any Obligation That Was Breached Regarding "Dirty Rooms."

Paragraphs 45 through 54 of the Complaint shift gears and allege that guests have left comments stating that they found "toenails in the bed sheets," that "elevators were dirty," that there were "stains on the couch," and that there were "holes punched in the wall."  And purportedly

---

[86] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease.
[87] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 14.
[88] Rec. Doc. 1-1, Complaint, at ¶ 25.
[89] Rec. Doc. 1-1, Complaint, at ¶ 26.
[90] Rec. Doc. 1-1, Complaint, at ¶ 28.
[91] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 1 (only granting Sonder the "non-exclusive use" of the common areas); ¶ 18 (providing that Master Tenant "shall pay all expenses, costs, and amounts of every kind or nature . . . because of or in connection with the ownership, operation, management . . . of the Property, including the Premise, and shall perform repairs necessary to maintain and keep the Property, including the Premises and the Common Areas . . . in good working order suitable for residential use.").
[92] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease.

because of those undated and unsourced comments, Plaintiffs allege that Master Tenant's license has been "jeopardized" and that this is a breach of Sonder's obligations.  This is not plausible.  First, as explained above, Plaintiffs have not alleged that any action has been taken against Master Tenant's hotel license, so there is no concrete injury or redressability.[93]  And second, Plaintiffs' Complaint fails to allege when the comments were made and whether they were addressed.  These allegations simply do not state a claim.

Lastly, to the extent the Complaint's reference to La. R.S. §§ 21:1 and 21:3 is an attempt to bring a claim against Sonder *under such statutes*, it fails.  These statutory provisions do not provide for any private right of action, are not among the limited enumerated reasons for revocation of an occupational license under the controlling City of New Orleans Code of Ordinances,[94] nor are they somehow automatically incorporated into a lease agreement between contracting parties.[95]  Plaintiffs' reliance upon them is misplaced.

### D.    The Complaint Does Not Plausibly Plead That Sonder Undertook and Breached Any Sublease Obligations Regarding "AAA Four-Diamond Standards."

Paragraphs 55 through 67 rest upon the last sentence of Provision 18 of the Sublease, which states, "*In all respects regarding repair and maintenance* of the Property and Premises, the parties mutually commit themselves to maintain the hotel industry AAA Four-Diamond Standard," with the key words being "repair and maintenance."[96]  Importantly, noticeably absent is any obligation for either party to "operate" or provide "service" at the Property or the Premises in accordance

---

[93] *See generally Denning v. Bond Pharmacy*, NO: 21-774, 2021 WL 9629068, at *3 (E.D. La. Oct. 13, 2021) (discussing standing in the context of a breach of contract claim).

[94] City of New Orleans Code of Ordinances, Ch. 150 Art. VII Sec. 150-973.

[95] Louisiana courts that have considered similar statutory schemes have determined that such penal statutes do not provide for a private right of action.  *See Monier v. St. Charles Par. Sch. Bd.*, 10-526 (La. App. 5 Cir. 5/10/11); 65 So. 3d 731, 735 (analyzing the "teacher bill of rights" statute and noting that the statute "did not provide for a remedy to any violation of the rights afforded [by it]," and that "if the legislature intended for there to be a remedy, it certainly could have provided one").

[96] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 18 (emphasis added).

with such standards.  Rather, the AAA Four-Diamond Standard was plainly contemplated only to apply to the repair and maintenance obligations of Master Tenant and Sonder.

But in Paragraph 57 of the Complaint, Plaintiffs allege that the AAA Four Diamond Standard (not the Sublease itself) required Sonder to perform a long list of "nightly turn-down and cleaning services for its guests."  And in Paragraph 58, Plaintiffs point to statements appearing on Sonder's public website to the effect that it does not provide daily housekeeping in its guest units. Paragraph 59 of the Complaint again cites to the AAA Four Diamond Standard (not the Sublease itself) regarding certain television standards, and Paragraphs 60 through 67 cite more portions of the AAA Four Diamond Standard requiring certain electrical outlets, mirrors, etc. in rooms.

While those allegations may be true of the AAA Four Diamond Standard, Plaintiffs cannot point to any provision in the Sublease requiring that Sonder (or Master Tenant) comply with all aspects of the AAA Four Diamond Standard, most importantly its requirements for service and operations of hotel lodging.  Plaintiffs' allegations regarding the AAA Four Diamond Standard are not plausible claims given the plain language of the Sublease cabining that Standard only to repairs and maintenance.

> ### E.    The Complaint Does Not Plausibly Plead That Sonder Undertook Any Maintenance Obligations That Were Breached.

Paragraph 68 of the Complaint cites Provision 18 of the Sublease, which requires that Sonder maintain and keep in good condition the "nonstructural interior cosmetic components [of the units]" and "repair all damage to the Premises caused by the fault or negligence of [Sonder's renters] . . . that exceeds the wear and tear attributable to normal single-tenant residential apartment use."[97]  In Paragraph 69, Plaintiffs allege that Sonder breached that obligation "as confirmed by guest complaints."  As noted above, the Complaint never alleges when those

---

[97] Rec. Doc. 1-1, Complaint.

complaints were made, who made them, and whether they were addressed. And more importantly, the Complaint never alleges that there is current, unrepaired damage to the Premises that Sonder has failed to repair. Paragraphs 70 through 77 are more of the same, but still fail to plead that there is any current, actual damage that Sonder is responsible for repairing. These pleading deficiencies are fatal to this claim.

### F. The Complaint Does Not Plausibly Plead That Sonder Breached Any Duties Owed Under Louisiana Civil Code Articles 2683, 2686, or 2692.

At a few points in the Complaint, Plaintiffs refer to Louisiana Civil Code articles 2683, 2686, and 2692 and vaguely suggest that they imposed duties upon Sonder above-and-beyond the Sublease. This is incorrect. Where there is a written sublease, "the particular terms of a lease form the law between the parties, defining their respective legal rights and obligations."[98] Indeed, "the Civil Code . . . while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship."[99] "In other words, the lease contract itself is the law between the parties; it defines their respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the common good."[100] Here, the Sublease explicitly states that as between the parties, the Sublease governs their relationship.[101] While Sonder obviously is required to fulfill the obligations *imposed upon it by the Sublease* in a prudent manner, Plaintiffs' suggestion that the code articles impose additional duties on Sonder is contrary to Louisiana law.

---

[98] *Garsee v. Makolli*, 54,452 (La. Ap. 2 Cir. 6/8/22); 341 So. 3d 880, 883–84.
[99] *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96); 702 So. 2d 648, 666.
[100] *Id*. (citing *Frey v. Amoco Prod. Co.*, 603 So. 2d 166, 172 (La. 1992)).
[101] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 27 (stating that "the parties to this Lease understand and agree that the provisions of this Lease, between them, as the effect of law . . . . ").

The Plaintiffs' claims in this regard are similar to those that were dismissed on an exception of no cause of action in *Quality Manufacturing Company, Inc. v. Direct Factory Stores, Inc.*, 540 So. 2d 419 (La. App. 1 Cir. 1989). The lease agreement in that case provided that the lessee was to use the leased premises "for the purpose of operating a retail business." The lessor sued, claiming that the lessee was in breach of the lease because it was not operating a "first-rate" clothing store on the lease premises, and cited the predecessor to Article 2683 (former Article 2710), which obligated the lessor to "enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease."[102] The trial court rejected the lessor's argument and dismissed the claim, and the court of appeal affirmed, finding that the Civil Code provision cited by the lessor did not impose additional obligations (to operate a first-rate clothing store) on the lessor contrary to what the lease agreement provided, which allowed the operation of a "retail business" on the lease premises.[103] The same is true here; the Sublease carefully delineates the rights and obligations of Master Tenant and Sonder. Accordingly, Plaintiffs' citation to these general Civil Code provisions does not state a cause of action against Sonder.

Thus, to the extent Plaintiffs seek to avoid the language of the Sublease by citing Louisiana Civil Code articles 2683, 2686, and 2692, Plaintiff's Complaint is not plausibly plead.

## IV. Alternatively, All Claims by Owner Must Be Dismissed for Lack of Contractual Privity.

The Complaint only asserts claims for breach of the Sublease. "It is axiomatic that only parties to a contract have standing to enforce that contract."[104] Accordingly, "to maintain a breach of contract cause of action under Louisiana law, a plaintiff must either be in privity of contract

---

[102] 540 So. 2d at 420–21.
[103] *Id.* at 420.
[104] *Aron v. G. Lewis-La. No. 2, L.L.C.*, No. 21-136, 2023 WL 157794, at *2 (M.D. La. Jan. 11, 2023).

with the opposing party or be a third-party beneficiary of the contract at issue."[105]  In the context

of a sublease, "a sublease does not result in privity of contract between the lessor (often called the

"prime" lessor) and the sublessee."[106]  Instead, in the event of an alleged breach, "the lessor

enforces the lease directly against the original lessee (sublessor), and the sublessor's and

sublessee's causes of action are against one another to enforce the provisions of the sublease."[107]

Here, there is no contractual privity between Sonder and Owner, and Owner has not alleged

that there is.  This is clear from the face of the Sublease, which is solely between and executed by

Sonder and Master Tenant.  Owner has not alleged that it is a third-party beneficiary to the

Sublease, nor has it alleged any facts that would support its status as a third-party beneficiary.

Additionally, Paragraph 36 of the Sublease specifically provides that there are no third-party

beneficiaries of the Sublease.[108]  Because the Complaint does not allege, and Owner cannot allege,

that it has any rights under the Sublease, all of Owner's claims should be dismissed.[109]

## V.    Alternatively, Master Tenant's Claim for Diminution of Property Value Should Be Dismissed.

The Complaint alleges that the Property is owned by Owner, not Master Tenant.[110]  Thus,

even if the value of the Property were diminished by any alleged breach of the Sublease by Sonder,

Master Tenant's patrimony was not reduced.  In other words, such damage was not sustained by

---

[105] *Id.*; *see also Dorsett Props., LLC v. New Rez, LLC*, NO. 22-1148, 2022 WL 17072282, at *3 (W.D. La. Nov. 16, 2022); *Lili Collections, LLC v. Terrebonne Par. Consol. Gov't*, 2014-1541 (La. App. 1 Cir. 6/18/15); 175 So. 3d 434, 436; *Sauer v. Toye*, 616 So. 2d 207, 211 (La. App. 5 Cir. 1993).

[106] 2 LOUISIANA PRACTICE SERIES REAL ESTATE TRANSACTIONS § 18:58, LAPRAC-RE § 18:58 (2022) (citing *Audubon Hotel Co. v. Braunnig*, 46 So. 33 (La. 1908)).

[107] *Id.*; MELISSA T. LONEGRASS ET AL., SALE, LEASE, AND ADVANCED OBLIGATIONS 616 (2019) (discussing the relationship and noting that the lessor (here, Owner) and sublessee (here, Sonder) "are not in privity of contract with one another; thus, neither is entitled to any contractual rights or owes any contractual obligations vis-à-vis the other."); *Hebert v. Hines*, 615 So. 2d 44 (La. Ct. App. 3 Cir. 1993) (discussing the sublease and stating "[t]here is no privity of contract between the sublessee and the original owner-lessor").

[108] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 36.

[109] *See Wagoner v. Chevron USA Inc.*, 45, 507 (La. App. 2 Cir. 8/18/10); 55 So. 3d 12, 24 (stating that non-party to a mineral lease had no right to assert claims under mineral lease code articles).

[110] Rec. Doc. 1-1, Complaint.

Master Tenant; it would have been sustained by Owner. Master Tenant thus cannot assert such a claim against Sonder as a matter of law.[111] And for the reasons outlined *supra*, Owner cannot assert such claims against Sonder because it lacks contractual privity. Indeed, to the extent such a claim exists (it does not), it would be Owner's claim to make *against* Master Tenant under the terms and conditions of the alleged primary lease between them. Thus, the Complaint's diminution of value claim must be dismissed.

## SECTION 5
## SONDER IS ENTITLED TO REASONABLE ATTORNEYS' FEES

Paragraph 34 of the Sublease provides that "if either party institutes a suit against the other for violation of or to enforce any covenant, term or condition of this Lease, the prevailing party shall be entitled to reimbursement of all of its costs and expenses, including, without limitation, reasonable attorneys' fees."[112] As shown above, Master Tenant's Complaint should be dismissed. As the prevailing party, Sonder requests an award of its reasonable attorneys' fees against Master Tenant, in an amount to be determined on a subsequent fee application.

## SECTION 6
## CONCLUSION

As outlined above, the Complaint is factually and legally defective. It should be dismissed pursuant to Rule 12(b)(6), and Sonder should be awarded its reasonable attorneys' fees.

---

[111] *See Kamath v. Batson*, NO. 19-265, 2020 WL 414462, at *1 (M.D. La. Jan. 24, 2020) (dismissing the plaintiff's claims because the underlying property was owned by a separate and distinct LLC and stating that "Plaintiff's Complaint states that Aztek owns the land that he alleges was subject to a taking. However, Aztec is not the plaintiff in this matter. Accordingly, Plaintiff lacks standing to bring suit"); *see generally Kelly v. Porter, Inc.*, 687 F.Supp. 2d 632, 636–37 (E.D. La. Jan. 22, 2010) (dismissing the plaintiff's claim to recover damages sustained by a vessel because the vessel was owned by a different entity, stating that "because Maverick owns the vessel, Kelly has no ownership interest in it and has no right of action to sue defendants to recover damages in his personal capacity.").
[112] Rec. Doc. 1-1 at 28–43, Exhibit A to Plaintiffs' Complaint, Sublease, at ¶ 34.

Respectfully submitted,

/s/ Sean T. McLaughlin
DAVID J. HALPERN (#6452)
david.halpern@keanmiller.com
DAVID M. WHITAKER, T.A.  (#21149)
david.whitaker@keanmiller.com
SEAN T. MCLAUGHLIN (#31870)
sean.mclaughlin@keanmiller.com
ZOE W. VERMUELEN (#34804)
zoe.vermuelen@keanmiller.com
Kean Miller LLP
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
COUNSEL FOR SONDER USA, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 29th day of March, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

/s/ Sean T. McLaughlin
**SEAN T. McLAUGHLIN**