UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE JUNG, LLC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 23-692** |
| **SONDER USA, INC.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

In this litigation, Plaintiffs The Jung, LLC ("Jung") and The Jung Master Tenant, LLC ("Master Tenant") (collectively, "Plaintiffs") bring claims against Defendant Sonder USA, Inc. ("Sonder") for alleged breaches of a sublease agreement and obligations imposed on lessees under Louisiana law.[1] Before the Court is Sonder's Motion to Dismiss.[2] Plaintiffs oppose the motion.[3] Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion and grants Plaintiffs leave to file an amended complaint to address the deficiencies identified herein, if possible.

## I. Background

On January 25, 2023, Plaintiffs filed a Petition for Damages against Defendant in the Civil District Court for the Parish of Orleans.[4] In the Petition, Plaintiffs allege that in 2007, Jung purchased the Jung Hotel building at 1500 Canal Street in New Orleans (the "Hotel") and

---

[1] Rec. Doc. 1-1.

[2] Rec. Doc. 7.

[3] Rec. Doc. 8.

[4] Rec. Doc. 1-1.

1

subsequently spent $155,000,000 for its renovation and restoration.[5] On February 24, 2015, Jung entered a master lease with Master Tenant for the entire Hotel property.[6] In 2018, the Hotel reopened as the Jung Hotel and Residences.[7] On August 2, 2018, Master Tenant and Sonder entered into a Sublease Agreement for a portion of the Hotel consisting of "a total of (111) residential apartment unit(s) . . . comprising twenty-five (25) two-bedroom and eighty-six (86) one-bedroom residential apartments" (the "Premises").[8] Generally, the Premises was comprised of the eighth through the seventeenth floors of the Hotel, "essentially a hotel within a hotel."[9]

Plaintiffs allege that Sonder's use of the Premises has fallen below the standard Louisiana law imposes on a prudent administrator.[10] For instance, Plaintiffs allege that Sonder provides its guests with virtually no security, which has resulted in shootings and other violent crime at the Premises.[11] Plaintiffs also allege that Sonder has not maintained the Premises in a clean and sanitary condition and that Sounder has not otherwise kept the Premises in good order and repair.[12] Plaintiffs bring claims for alleged breach of the sublease and for alleged breach of Sonder's obligations under Louisiana law.[13]

---

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 6.

[11] *Id.* at 7–13.

[12] *Id.* at 19–25.

[13] *Id.*

On February 24, 2023, Sonder removed the case to this Court.[14] On March 29, 2023, Sonder filed the instant motion to dismiss.[15] On April 11, 2023, Plaintiffs filed an opposition to the motion.[16] On April 20, 2023, with leave of Court, Sonder filed a reply brief in further support of the motion.[17]

## II. Parties' Arguments

### A. *Sonder's Arguments in Support of the Motion to Dismiss*

Sonder raises five primary arguments in support of the motion to dismiss.[18] First, Sonder argues that all of Plaintiffs' claims are barred by the Sublease's notice and cure provision.[19] Sonder asserts that the Sublease requires Master Tenant to give Sonder written notice of any alleged failure to comply with the terms of the Sublease and a thirty-day period after notice to cure the defaults.[20] Sonder contends that the Sublease requires that the notice be sent by certified mail to Sonder's headquarters in San Francisco.[21] Sonder points out that Plaintiffs do not allege that they complied with the notice and cure provision.[22] Therefore, Sonder argues that all of Plaintiffs' claims must be dismissed.[23]

---

[14] Rec. Doc. 1.

[15] Rec. Doc. 7.

[16] Rec. Doc. 8.

[17] Rec. Doc. 11.

[18] Rec. Doc. 7-1.

[19] *Id.* at 8–10.

[20] *Id.* at 8.

[21] *Id.*

[22] *Id.* at 10.

[23] *Id.*

Second, Sonder contends that Plaintiffs' claims are barred by the Sublease's limitation of remedies provision.[24] Even if Sonder had been properly placed on notice and failed to cure a default, Sonder asserts that termination or payment of past due rent are the only remedies available.[25] Therefore, Sonder contends that Plaintiffs' requests for damages and specific performance are barred by the terms of the Sublease.[26]

Third, Sonder asserts that Plaintiffs failed to cite any provision of the Sublease that Sonder allegedly breached.[27] Sonder contends that Plaintiffs do not plausibly allege that Sonder breached any obligation regarding hotel licensure because Plaintiffs have not alleged that the hotel license is in jeopardy.[28] Additionally, Sonder asserts that Plaintiffs do not plausibly allege that Sonder breached any obligation regarding security, as the Sublease makes clear that Sonder does not control the common areas of the hotel.[29] Sonder contends that Plaintiffs also do not plausibly allege that Sonder breached any obligation regarding "dirty rooms" or that Sonder breached any maintenance obligations.[30]

Fourth, Sonder argues that Plaintiffs do not plausibly allege a violation of Louisiana law.[31] Sonder asserts that the Sublease is the law between the parties, as it explicitly states that it governs

---

[24] *Id.* at 10–12.

[25] *Id.* at 10.

[26] *Id.* at 12.

[27] *Id.* at 12–21.

[28] *Id.* at 13.

[29] *Id.* at 15.

[30] *Id.* at 18–20.

[31] *Id.* at 20.

their relationship.³² Sonder contends that Plaintiffs' suggestion that the Louisiana Civil Code imposes additional duties on Sonder is contrary to Louisiana law.³³

Fifth, Sonder asserts that any claim by Jung must be dismissed because it is not a party to the Sublease and there is no contractual privity between Sonder and Jung.³⁴ Additionally, Sonder contends that Master Tenant cannot bring a claim for diminution of property value because the property is owned by Jung.³⁵ For these reasons, Sonder argues that all of the claims against it should be dismissed, and it should be awarded attorneys' fees as the prevailing party under Paragraph 34 of the Sublease.³⁶

### B.   *Plaintiffs' Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiffs contend that they have stated multiple claims against Sonder under Louisiana law.³⁷ Plaintiffs cite Comment (e) to Louisiana Civil Code article 2668, which provides that "[i]f the contract is one of lease, then the rules of this Title become applicable for filling any gaps in the parties' agreement and for determining its overall validity and effectiveness. . . ."³⁸ Plaintiffs assert that they have stated a claim for Sonder's breach of its obligations under Louisiana Civil Code article 2683 because they allege that Sonder failed to use

---

³² *Id.*

³³ *Id.* at 20–21 (citing *Quality Mfg. Co. v. Direct Factory Stores, Inc.*, 540 So. 2d 419, 420–21 (La. App. 1 Cir. 1989)).

³⁴ *Id.* at 21.

³⁵ *Id.* at 22.

³⁶ *Id.* at 23.

³⁷ Rec. Doc. 8 at 4.

³⁸ *Id.*

the Premises as a prudent administrator.[39] As examples, Plaintiffs point to the allegations that: (1) Sonder allowed the name of the hotel to become associated with several negative events; (2) Sonder failed to provide meaningful security; and (3) Sonder failed to maintain the premises in a sanitary condition.[40]

Additionally, Plaintiffs assert that they have stated a claim under Louisiana Civil Code article 2686 because Sonder used the Premises in a manner that caused damage to Plaintiffs.[41] Plaintiffs also argue that they have stated a claim under Louisiana Civil Code article 2688 because Sonder failed to notify Master Tenant of damages to the Premises.[42]

Finally, Plaintiffs contend that they gave Sonder at least five written notices of the defaults through email.[43] Plaintiffs contend that the Sublease does not mandate any particular form of notice.[44] Rather, Plaintiffs point out that the notice provision provides that "[a]ny notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certifie[d] mail, return receipt requested, addressed" to Sonder's corporate headquarters.[45] Plaintiffs contend that the provision gives rise to a presumption of proper notice if it is mailed in a certain manner, but it does not require that notice be made in any specific form.[46] Therefore, Plaintiffs contend that the motion should be denied, or alternatively, Plaintiffs

---

[39] *Id.* at 6.

[40] *Id.* at 7.

[41] *Id.*

[42] *Id.* at 8.

[43] *Id.* at 9.

[44] *Id.*

[45] *Id.* at 10 (quoting Rec. Doc. 1-1 at 35).

[46] *Id.*

should be given an opportunity to amend the complaint to cure any alleged deficiencies.[47]

### C.     *Sonder's Arguments in Further Support of the Motion to Dismiss*

In reply, Sonder points out that Plaintiffs failed to respond to the argument that the claims for damages and specific performance are barred by the Sublease's limitation of remedies.[48] Additionally, Sonder points out that Plaintiffs did not respond to the argument that Jung cannot bring a claim under the Sublease or that Master Tenant cannot bring a claim for diminution of property value.[49] Sonder also points out that Plaintiffs do not address how Sonder breached the Sublease.[50]

Sonder also argues that Plaintiffs cannot rely on the Louisiana Civil Code to fill "gaps" in the Sublease because they have not alleged any "gaps" that need to be filled.[51] Sonder asserts that Plaintiffs cannot use the Code to rewrite the Sublease.[52] Finally, Sonder contends that the emails Plaintiffs reference do not provide notice of many of the defaults alleged in the Complaint.[53]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[54] A motion to dismiss for failure to

---

[47] *Id.*

[48] Rec. Doc. 11 at 2.

[49] *Id.* at 2–3.

[50] *Id.* at 3–4.

[51] *Id.* at 5–6.

[52] *Id.* at 6.

[53] *Id.* at 9–10.

[54] Fed. R. Civ. P. 12(b)(6).

state a claim is "viewed with disfavor and is rarely granted."[55] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[56] "Factual allegations must be enough to raise a right to relief above the speculative level."[57] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[58]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[59] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[60] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[61] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[62] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[63] That is, the complaint must offer more than an "unadorned,

---

[55] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[57] *Twombly*, 550 U.S. at 555.

[58] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[59] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[60] *Iqbal*, 556 U.S. at 678–79.

[61] *Id.* at 679.

[62] *Id.* at 678.

[63] *Id.*

the-defendant-unlawfully-harmed-me accusation."[64] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[65] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[66]

## IV. Analysis

In the Petition, Plaintiffs appear to bring claims against Sonder for alleged breaches of its obligations under the lease and under Louisiana law. The Court addresses each of these claims in turn.[67]

**A.     *Whether Plaintiffs Have Stated a Claim for Alleged Breaches of Sonder's Obligations Under Louisiana Law***

Sonder argues that Plaintiffs cannot plausibly allege a violation of Louisiana law because the Sublease is the law between the parties, as it explicitly states that it governs their relationship.[68] In opposition, Plaintiffs contend that they have stated multiple claims against Sonder under Louisiana Civil Code articles 2683, 2688, and 2692.[69]

---

[64] *Id.*

[65] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[66] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[67] As an initial matter, the Court notes that the Sublease is attached to the Petition and is incorporated into the Petition by reference. Therefore, in addition to the allegations raised in the Petition, the Court considers the provisions of the Sublease when ruling on this motion. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (In ruling on a Rule 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

[68] Rec. Doc. 7-1 at 20.

[69] Rec. Doc. 8.

Under Louisiana law, "[t]he lessor's and lessee's duties *ex contractu* are set forth in the parties' contract of lease; in Title IX of the Civil Code, Of Lease, art. 2669 *et seq.*; and in Title III of the Civil Code, Obligations in General, art. 1756 *et seq.*"[70] "The Civil Code, however, while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship."[71]

Here, the Sublease provides that it "has the effect of law" between the parties.[72] However, the Sublease also recognizes that "in reference to matters for which this lease does not provide, this Lease shall be governed by and construed in accordance with the Ordinances of the City of New Orleans, the laws of the State of Louisiana and the federal laws of the United States."[73]

Louisiana law imposes a principal obligation on lessees to "use the thing as a prudent administrator and in accordance with the purpose for which it was leased."[74] "If the lessee uses the thing for a purpose other than that for which it was leased or in a manner that may cause damage to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained."[75] "The lessee is bound to notify the lessor without delay when the thing has been damaged or requires repair. . . . The lessor is entitled to damages sustained as a result of the lessee's failure to perform this obligation."[76] "The lessee is bound to repair damage

---

[70] *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 665–66, *on reh'g* (Nov. 3, 1997).

[71] *Id.* at 666.

[72] Rec. Doc. 1-1 at 35.

[73] *Id.*

[74] La. Civ. Code art. 2683(2).

[75] La. Civ. Code art. 2686.

[76] La. Civ. Code art. 2688.

10

to the thing caused by his fault or that of persons who, with his consent, are on the premises or use the thing, and to repair any deterioration resulting from his or their use to the extent it exceeds the normal or agreed use of the thing."[77]

Plaintiffs allege that Sonder breached each of these obligations.[78] The Louisiana Civil Code imposes "certain implied rights and obligations that arise by nature of a contract of lease, without any specific clause to that effect."[79] "If the parties do not specify in the lease to the contrary, the general law of lease in the Civil Code will supply that implied right or obligation."[80] Sonder's argument that these basic obligations of a lessee are somehow overridden by the provisions of the Sublease is unavailing. Nothing in the Sublease suggests that these obligations were waived. Indeed, the Sublease recognizes that Louisiana law governs "matters for which this lease does not provide."[81]

Sonder contends that Plaintiffs' suggestion that the Louisiana Civil Code imposes additional duties on Sonder is contrary to Louisiana law.[82] In support, Sonder cites *Quality Manufacturing Company, Inc. v. Direct Factory Stores, Inc.*[83] There, the parties entered a lease agreement where the lessee agreed to use the premises "for the purpose of operating a retail business."[84] The lessor claimed that the lessee was in breach of the lease because it was not

---

[77] La. Civ. Code art. 2692.

[78] Rec. Doc. 1-1.

[79] 2 La. Prac. Real Est. § 18:19, Implied rights and obligations (2d ed. 2022).

[80] *Id.*

[81] Rec. Doc. 1-1 at 35.

[82] Rec. Doc. 7-1 at 20–21.

[83] 540 So. 2d 419 (La. App. 1 Cir. 1989).

[84] *Id.* at 420.

operating a "first quality clothing outlet" on the lease premises.[85] The lessor argued that the lessee had breached its obligation to "enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease."[86] The trial court rejected the lessor's argument and dismissed the claim, and the Louisiana First Circuit Court of Appeal affirmed, finding that the lease did not include "an implied obligation to maintain a first-quality clothing outlet."[87] The appellate court reasoned that when a lease is silent on the intended use of the premises, "the circumstances must clearly show that the parties intended only a certain use of the property in order for such use to be deemed the exclusively 'intended' use within the meaning of" the Louisiana Civil Code.[88]

*Quality Manufacturing* concerned an intended use of a leased premises. This case is clearly distinguishable. Here, Plaintiffs allege that Sonder failed to use the Premises as a prudent administrator by failing to provide guests with security and by failing to maintain the Premises in a clean and sanitary condition. Accordingly, the Court finds that Master Tenant has stated a claim against Sonder for alleged violation of its obligations under Louisiana Civil Code articles 2683(2), 2686, 2688, and 2692.

Additionally, the Louisiana Civil Code specifically provides for damages attributable to violations of articles 2686 and 2688. Therefore, Sonder's argument that damages are barred by the Sublease's limitation of remedies provision is unavailing.[89] Sonder's argument that notice of

---

[85] *Id.* at 421.

[86] *Id.* at 420.

[87] *Id.* at 421.

[88] *Id.* (quoting *Tullier v. Tanson Enterprises, Inc.*, 367 So. 2d 773, 776 (La. 1979)).

[89] The limitation of remedies provision states: "If [Sonder] is in default under this Section 29, [Master Tenant] may, as its sole and exclusive remedy, cancel and terminate this Lease upon written notice to [Sonder] and proceed for all past due Rent owed by [Sonder] as of the date of such termination." Rec. Doc. 1-1 at 36. By its express terms, this limitation of remedies applies to defaults under the Sublease, not to alleged violations of Sonder's

its defaults was required under paragraph 29 of the Sublease is similarly misplaced. The Sublease's default provision provides:

> [Sonder] will be in default under this Lease if any one or more of the following events occurs: (a) [Sonder] fails to pay any then due installment of Rent within ten (10) calendar days after [Sonder] receives written notice from [Master Tenant of] such failure; (b) [Sonder] fails to comply with any of the other provisions of this Lease, and that failure continues for more than thirty (30) calendar days after [Sonder] receives written notice from [Master Tenant of] such failure. . . .[90]

Therefore, by its clear terms, the notice provision applies to defaults under the Sublease, not to alleged violations of Sonder's obligations under Louisiana law.

However, Plaintiffs have not shown that Jung has a claim for breach of these obligations under Louisiana law. The Civil Code articles discussed above relate to obligations a lessee owes to a lessor. Master Tenant leased the hotel from Jung, then Master Tenant subleased the Premises to Sonder. Master Tenant is the only lessor listed on the Sublease.[91] "The rights and obligations of the sublessor and sublessee arise out of the provisions of the sublease; however, there is no privity of contract between the owner of the property and the sublessee."[92] "[T]he lessor enforces the lease directly against the original lessee (sublessor), and the sublessor's and sublessee's causes of action are against one another to enforce the provisions of the sublease."[93] Additionally, the Sublease specifically provides that there are no third-party beneficiaries of the Sublease and that no other entity shall "have any direct or indirect cause of action or claim in connection with, this

---

obligations under Louisiana law.

[90] Rec. Doc. 1-1 at 36.

[91] *Id.* at 28.

[92] *R & E Petroleum, LLC v. LKM Convenience, LLC*, 22-376 (La. App. 5 Cir. 2/1/23).

[93] 2 La. Prac. Real Est. § 18:58, § 18:58. Assignment and subletting—Distinction between assignment and sublease (2d ed. 2022) (citing *Audubon Hotel Co. v. Braunnig*, 120 La. 1089, 46 So. 33 (1908)).

13

Lease."[94]

Plaintiffs do not cite any authority to show that Jung, the owner of the building and original lessor, has a claim for damages arising from Sonder's alleged breach of its obligations to Master Tenant, the sublessor. Therefore, the Court concludes that Jung has not stated a claim against Sonder under Louisiana Civil Code articles 2683(2), 2686, 2688, and 2692. Nevertheless, it is unclear to the Court whether Jung is attempting to bring any other claim against Sonder, such as a claim for diminution in value of the hotel. Short of granting a motion to dismiss, a court may grant Plaintiffs leave to amend the Complaint.[95] Accordingly, the Court grants Plaintiffs leave to amend the Complaint to clarify this issue.

### B. *Whether Plaintiffs Have Stated a Claim Against Sonder for Alleged Breach of the Contractual Provisions*

Sonder asserts that Plaintiffs failed to cite any provision of the Sublease that Sonder allegedly breached.[96] Plaintiffs do not respond to this argument, but argue that they provided notice of the alleged defaults to Sonder.[97] Considering that the Court has allowed Plaintiffs leave to amend the Complaint to address any claim by Jung, the Court will also allow Plaintiffs leave to amend to clarify whether Plaintiffs are alleging a breach of any of the contractual provisions of the Sublease.[98]

---

[94] Rec. Doc. 1-1 at 37.

[95] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir.2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir.1981)).

[96] Rec. Doc. 7-1 at 12–21.

[97] Rec. Doc. 8.

[98] To the extent that Sonder argues Plaintiffs' claims under the Sublease are barred by the notice and cure provision, the Court finds that this is a factual issue that cannot be decided on a motion to dismiss. The Sublease states that "notice required or permitted under this Lease . . . shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested" to Sonder's headquarters in San Francisco, California, with a copy to its office in Elmwood, Louisiana. Rec. Doc. 1-1 at 35. The Sublease does not explicitly mandate any

## V. Conclusion

Considering the foregoing reasons, the Court denies the motion to dismiss, and grants Plaintiffs leave to file an amended complaint to address the deficiencies noted herein, if possible.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sonder USA, Inc.'s Motion to Dismiss[99] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file an amended complaint within fourteen days of this Order to cure the deficiencies noted, if possible.

**NEW ORLEANS, LOUISIANA,** this  20th  day of June, 2023.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

particular form of notice.

[99] Rec. Doc. 7.